IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LEONE SYRING, as personal
representative of the Will of Marshall
C. Syring, deceased,

                     Plaintiff,

  v.

UNITED STATES OF AMERICA,

                     Defendant.

AMENDED
OPINION & ORDER

12-cv-232-wmc

---

The plaintiff Leone Syring, in her capacity as personal representative of the Estate of Marshall Syring, deceased ("the Estate"), brought this action for refund of a remittance she made to the Internal Revenue Service ("IRS") before the estate tax return was filed and the tax liability was assessed.  The IRS denied the Estate's request for refund on the grounds that: (1) the remittance was a partial estate tax payment; and (2) the Estate filed the estate tax return after a 3-year bar to recovery.  Both sides have moved for summary judgment.  (Dkt. ##16, 22.)

The core question in these cross motions is whether the remittance made by the Estate to the IRS should be characterized as a deposit under 26 U.S.C. § 6603 or as a tax payment.  If the remittance is a deposit, the Estate is entitled to the refund.  If, however, the remittance is a tax payment, the Estate's claim falls outside the three-year tax refund period under 26 U.S.C. 6511(a).  Despite having strong equities on its side, the court finds that the Estate has failed to meet its burden of putting forth sufficient evidence from which a reasonable trier of fact could find that the remittance was a deposit.

Plaintiff's motion for summary judgment will, therefore, be denied and defendant's motion for summary judgment will be granted.

UNDISPUTED FACTS[1]

Marshall C. Syring died on October 14, 2005. Plaintiff Leone Syring is the personal representative of the Estate of Marshall C. Syring. Roger Peterson is a certified public accountant hired by the plaintiff to prepare Mr. Syring's estate tax return.

Pursuant to 26 U.S.C. § 6075(a), the Estate was required to file an estate tax return on or before July 14, 2006.[2] In a letter to plaintiff dated July 12, 2006, Peterson stated:

> Marshall's estate is large enough where it owes Federal and State estate taxes. In connection with this the following payments are due prior to July 14, 2006.
>
> | | | |
> |---|---|---|
> | Federal | $170,000 | |
> | State | $170,000 | |
> | Total | $340,000 | |
>
> Please note, we estimate the total Federal estate tax will be more than $600,000. The full amount is not being paid at this time because the estate qualifies to pay the tax over the next ten (10) years. Accordingly, additional time is provided in order for you to decide on how much of the property may be sold. Finally, the Internal Revenue charges 2% interest on the unpaid taxes, which is a low rate.
>
> Continuing, the entire estimated amount of the Wisconsin estate tax is being paid at this time. The State of Wisconsin charges 12% interest on the unpaid balance. Therefore, because of the State's high interest rate, we recommend paying all of the State estate taxes at this time.

---

[1] For the purposes of this motion, the court will construe all of plaintiff's factual allegations as true and draw all reasonable inferences in its favor. Fed. R. Civ. P. 12(b)(6); *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006); *Schuster v. Lucent Tech., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003).

[2] 26 U.S.C. § 6075(a) provides that returns relating to estate taxes shall be filed within nine months after the date of the decedent's death.

(Declaration of Michael R. Phil ("Phil Decl."), Ex. 2 (dkt. #25-2) 1 (underlining in exhibit).)

Consistent with Peterson's advice, on July 14, 2006, the Estate filed an application for extension and remitted $170,000 to the IRS. However, the Estate did not include a written statement designating the remittance as a deposit as required by Section 4.02(1) of Rev. Proc. 2005-18.[3]

Even with the extension to January 14, 2007, the Estate missed the deadline to file a tax return. Instead, more than three years later, the Estate filed an estate tax return on February 19, 2010, reporting no estate tax due.[4] The IRS then conducted an audit and determined that the Estate owed taxes in the amount of $25,526. Plaintiff did not challenge the amount of the assessed estate tax, but requested the IRS return $144,474, comprising the original remittance less the assessed estate tax.

The IRS denied its request on the grounds that: (1) the remittance was properly treated as a partial tax payment, rather than a deposit under 26 U.S.C § 6603, in light of plaintiff's failure to provide the IRS with a written statement designating the remittance as a deposit, as required by Rev. Proc. 2005-18; and (2) treated as a payment, the

---

[3] Section 4.02(1) of Rev. Proc. 2005-18 provides that a taxpayer may make a deposit under section 6603 by remitting to the Internal Revenue Service Center, in the form of a check or a money order, accompanied by a written statement designating the remittance as a deposit. The written statement also must include (1) a description of the type of tax at issue, (2) the applicable tax year, and (3) the statement described in section 7.02 identifying the amount of and basis for the disputable tax.

[4] The three-year tax recovery period officially expired on January 13, 2010, meaning the Estate filed the estate tax return just more than a month after the recovery period had expired.

Estate's claim falls outside the three-year tax recovery period under 26 U.S.C. § 6651(a) and (b)(2)(A).

A taxpayer provides a written statement designating any amount remitted as a deposit. The IRS records it as such pursuant to Code 640. If the taxpayer does not provide this notice, the IRS records the amount remitted as a "payment received" pursuant to Code 670. Before the tax return is filed, a payment under Code 670 will be placed in the taxpayer account pending the filing of the return. If the three-year tax recovery period expires or there is determined to be an underpayment, the remittance will be from the taxpayer account. If the tax return is filed within the three-year period and there is determined to be an overpayment, the IRS will calculate interest back to the due date of the return.

Upon receiving the Estate's $170,000 remittance in this case, the IRS recorded the remittance under Code 670 as a "payment received" because the Estate did not provide a written statement designating the remittance as a deposit. The IRS also did not calculate any interests owed to the Estate because the three-year tax recovery period had expired when the Estate filed the estate tax return.

OPINION

Summary judgment is appropriate if there are no genuine disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to judgment as a matter of law.

*Celotex*, 477 U.S. at 323. Once the burden is met, the non-moving party must go beyond the pleadings and designate specific facts to support or defend each element of the cause of action. *Id*. at 322-23. Neither party may rest on mere allegations or denials of the pleadings, or upon conclusory statement in affidavits. *Palucki v. Sears, Rosebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Both parties must produce proper documentary evidence to support their contentions. *Whetstine v. Gates Rubber Co.*, 895 F.2d 388, 392 (7th Cir. 1990).

A claim for refund of an overpayment of any tax must be filed within three years from the time the return was filed. 26 U.S.C. § 6511(a). The court has no jurisdiction over a refund claim if the remittance was a tax payment and the request for refund was made outside this three-year recovery period. *United States v. Dalm*, 494 U.S. 596, 609 (1990). Since plaintiff did not file the estate tax return requesting the refund of the remittance within the three-year recovery period, plaintiff bears the burden of establishing this court's subject matter jurisdiction by demonstrating that the remittance was a deposit, rather than a tax payment. *See, e.g.*, *Porter v. United States*, 919 F. Supp. 927, 935 (E.D. Va. 1996) ("Given that the plaintiff has the burden of proving subject matter jurisdiction, other courts have granted dismissal where the plaintiff claims that a particular remittance is a deposit, but where the Court finds the remittance to be a payment.").

In determining whether a remittance is a deposit or a tax payment, the court applies a "fact-and-circumstances" test, considering (1) when the tax liability is defined, (2) the taxpayer's intent in remitting the money, and (3) how the IRS treats the

remittance upon receipt. *Moran v. United States*, 63 F.3d 663, 668 (7th Cir. 1995), *overruled on other grounds Malachinski v. C.I.R.*, 268 F.3d 497 (7th Cir. 2001), (citing *Ewing v. United States*, 914 F.2d 499, 503 (4th Cir. 1990)). Ultimately, the determination of whether a remittance is a deposit or tax payment is a question of law for the court. *Moran*, 63 F.3d at 666. Based on a consideration of each of these factors, the court finds that plaintiff here failed to meet its burden of demonstrating the remittance was a deposit.

I.  Timing of Determination of Tax Liability

The first factor considers whether the tax liability was defined at the time the remittance was made. A remittance made before the tax liability is defined tips the balance toward a finding of a deposit. *See Rosenman v. United States*, 323 U.S. 658, 662 (1945) (holding that the remittance was a deposit partially because the tax obligation did not become defined at the time the remittance was made); *Malachinski v. C.I.R.*, 268 F.3d 497, 508 (7th Cir. 2001) (finding a deposit partially because the remittance was made well before the deficiency was prepared and tax liability was defined); *Moran*, 63 F.3d at 669 (finding remittance was a tax payment partially because the taxpayer had received a deficiency notice and remitted money in response to the asserted tax liability); *Huskins v. United States*, 75 Fed. Cl. 659, 671-72 (2007) (explaining absence of an obligation imposed by law to pay any tax weighs in favor of a finding of a deposit).

The undisputed facts here establish that there was neither a formal assessment nor a defined tax liability at the time the remittance was made. Defendant nevertheless

argues that this factor should weigh in favor of the finding of a tax payment because plaintiff had determined that the Estate owed $648,000 of estate tax and made the remittance in response to that "asserted tax liability." (Def.'s Br. (dkt. #23) 18.) Defendant's approach, however, would collapse this factor into the second factor, which focuses on the taxpayer's subjective perception of how much tax he or she owes. The better view, from the court's interpretation, is for this factor to focus on whether, objectively, the *IRS* has defined the taxpayer's tax obligation. This approach also appears consistent with other courts' treatment of this factor. *See Rosenman*, 323 U.S. at 662; *Malachinski v*, 268 F.3d at 508; *Moran*, 63 F.3d at 669; *Huskins*, 75 Fed. Cl. at 671-72.

The first factor therefore weighs in favor of categorizing the remittance as a deposit, but this alone does not resolve the matter; it must be considered in the context of all the facts and circumstances to be weighed. *See Boensel v. United States*, 99 Fed. Cl. 607, 612 (2011) ("The fact that the estate tax had not been assessed at the time of the remittance is not determinative.").

## II. Taxpayer's Intent

The taxpayer's intent has an important place in the facts-and-circumstances test employed by the Seventh Circuit in *Moran*, 63 F.3d at 669. Courts may only derive that intent from reasonable interpretations of the taxpayer's actions, not from the taxpayer's after-the-fact claims and rationalizations. *Id.* Here, plaintiff failed to put forth sufficient evidence from which a reasonable trier of fact could conclude that she intended to make

a deposit in signing the checks. Indeed, the contemporary evidence is wholly to the contrary.

A written statement designating the remittance as a deposit, as required by 26 U.S.C. § 6603 and Rev. Proc. 2005-18, is *prima facie* evidence that the plaintiff intended to make a deposit in submitting the money. Not only is this evidence lacking, because plaintiff did not conform to the requirements of the statutory mechanism prescribed in the tax code and the IRS regulations, the Estate's personal representative fails to offer an affidavit, declaration, or other testimony describing her intent at the time she made the payment. As such, there is no direct evidence indicating plaintiff's intent in making the remittance. The court can only derive intent from other indirect evidence.

Since it is undisputed that Syring relied on the Estate's account, Roger Peterson, for advice and recommendations in making the remittance, the court must look to advice and recommendations to determine plaintiff's intent. In addition, the court will examine Peterson's actions to determine his intent in delivering his professional opinions to the plaintiff.

Peterson's actions, advice and recommendations all demonstrate plaintiff's intent to make a partial tax *payment* in remitting the original $170,000. In a letter dated July 12, 2006, Peterson advised Syring that "the Estate is large enough where *it owes Federal and State estate taxes.*" (Phil Decl., Ex. 2 (dkt. #25-2) 1 (emphasis added).) *In connection with this* "debt", Peterson advises that "payments" of $170,000 each to the Federal and State government "are due prior to July 14, 2006." (*Id.*) Ultimately, Peterson goes on to advise that the estimated federal estate tax will be more than $600,000 but "the full

8

amount need not be paid at this time because the estate qualifies to *pay the tax* over the next ten years;" that the "Internal Revenue charges 2 % interest *on the unpaid taxes*, which is a low rate;" and that "the entire estimated amount of the Wisconsin state tax is being paid at this time" because of "the State's high [12%] interest rate." (*Id.*) Having indisputably acted promptly on this advice, no reasonable person could find plaintiff considered the remittance to be a deposit rather than a down payment on the Estate's larger tax liability.

The evidence is equally overwhelming that *Peterson* considered the remittance to be a partial tax payment when he recommended plaintiff pay it. *First*, Peterson calculated the estimated estate tax liability based on the assumption and valuation method he deemed appropriate at the time, rather than based purely on speculation. Indeed, plaintiff conceded that Peterson used fair market value to calculate the value of the gross estate. (Pl.'s Resp. to Def.'s PFOFs (dkt. #28) 4.) The estimated total federal estate tax of $650,000 was made under the assumption that the Estate qualifies as a qualifying small business, which Peterson deemed appropriate at the time. (Dep. Tr. of Roger Peterson (dkt. #26) 23:17-22.) Peterson even took into account the different interest rates on unpaid taxes charged by the IRS and the State of Wisconsin in recommending that plaintiff pay only part of the federal estate tax liability due. The estimated estate taxes liability and the amount of the remittance were products of careful consideration.

*Second*, after concluding that the Estate owed federal estate tax and being provided with the opportunity to postpone the deadline of paying that tax, Peterson filed Form

4768 with the IRS on behalf of the Estate, requesting only an extension of time for filing the tax return.  An extension of time for filing a return does not operate to extend the time for payment of the tax.  26 C.F.R. § 20.6081-1(e).  To apply for an extension of time to pay the tax, the taxpayer must (1) check the appropriate boxes on Form 4768 *and* (2) provide the IRS with a written statement demonstrating either there are reasonable causes to delay payments or there are undue hardships to pay tax on time.  *See* 26 U.S.C. § 6161(a), 26 C.F.R. § 20.6161-1(a).  Despite these straightforward instructions being included in Part III of Form 4768, Peterson neither checked any of the boxes in Part III of the form, nor provided any written statements to the IRS explaining any difficulties the Estate had in paying the estimated estate taxes.  Instead, Peterson entered $170,000 in Part IV, line 1 of Form 4768, which he represented was the amount of estate taxes estimated to be due then, as well as instructed plaintiff to submit that amount to the IRS.  The way Peterson completed Form 4768, together with the fact that Peterson had informed plaintiff that the estate owed federal estate taxes but did not have to pay the full amount, also strongly suggests that Peterson intended the remittance to be a partial tax payment.

      Still, plaintiff contends the printed Form 4768 does not contain a column for deposit, meaning that a remittance made along with the form could still be a deposit.  While the court agrees that, in certain circumstances, a remittance made along with a printed Form 4768 might not be a tax payment, this fact does not support a finding that the Estate *intended* to make a deposit here, at least in the face of overwhelming, contemporaneous evidence to the contrary.

Plaintiff also argues that the remittance was more like a deposit because Peterson was unable to ascertain the amount of the estate tax liability and recommended the remittance with the intent to stop interest and penalties, citing *Blom v. United States*, No. Civ.A. 05-2383, 2006 WL 1517393 (E.D. Pa. May 31, 2006).  However, *Blom* is distinguishable from the instant case.  In *Blom*, the taxpayer was an unsophisticated individual who had not thought about or estimated the amount of the tax liability before making a remittance to the IRS.  *Id*. at *1.  The *Blom* taxpayer also did not consult an attorney or accountant regarding this tax issue.  *Id*.  The court found that the remittance was a deposit because the taxpayer did not properly estimate the taxes owed and simply made the remittance to prevent any penalties.  *Id*. at *2-3.  Here, on the contrary, the Estate made the remittance pursuant to the recommendations of its accountant, Peterson.  As a certified public accountant, Peterson had even estimated the estate tax liability to be $650,000 based on an assumption and valuation method he deemed appropriate at the time.

Citing *Rosenman v. United States*, 323 U.S. at 659-60, *Cohen v. United States*, 995 F.2d 205, 208 (Fed. Cir. 1993), and *Crosby v. United States*, 889 F. Supp. 148, 152 (D. Vt. 1995), plaintiff also asserts that the remittance is a deposit if made to stop interest and penalties.  (Pl.'s Opp'n (dkt. #29) 6.)  The court disagrees.  While it is true that the intent to stop interest and penalties may support a finding that the taxpayer intends to make a deposit, an intent to stop interest and penalties does not exclude the possibility that the taxpayer intended to make a tax payment in remitting the money.  In fact, making a large tax payment before formal assessment has the same practical effect of

11

mitigating or preventing any interest or penalties due to underpayment or untimeliness. Therefore, the taxpayer's intent of stopping interest and penalties is at most another fact to determine whether the taxpayer intended to make a deposit or a tax payment.

If anything, the cases cited by plaintiff actually support the court's reasoning. In addition to expressing an intent to stop interest and penalties, all the taxpayers, in those cases, unambiguously indicated that they either disputed the assessed tax and/or intended to make a deposit. *See Rosenman*, 323 U.S. at 660 (taxpayer submitted the remittance with a letter stating that the payment was "made under protest and duress, and solely for the purpose of avoiding penalties and interest"); *Cohen*, 995 F.2d at 209 (taxpayer consistently protested and contested the additional tax liability); *Crosby*, 889 F.Supp. at 149 (Co-Administrators submitted to the IRS a $10,000 check for use as a deposit, or cash bond, against any tax assessment or deficiency that might be determined in the future).

Given such explicit statements, the courts in those cases understandably held that the taxpayers did not intend to pay a tax. Here, in contrast, the Estate neither disputed its tax liability when remitting the money to the IRS, nor did plaintiff or Mr. Peterson ever make any explicit or implied statement supporting their after-the-fact attempt to categorize the remittance as a deposit. On this record, the intent of stopping interest and penalties alone is insufficient to support a reasonable fact finder's determination that the Estate intended the remittance to be a deposit.

### III. IRS's Treatment of Remittance

The final factor the court must consider is the IRS's treatment of the remittance itself which the court concludes also weighs in favor of defendant. First, plaintiff acknowledges not providing the IRS with any written statement designating the remittance as a deposit. Pursuant to Section 4.01(2) of Rev. Proc. 2005-18, the IRS will treat such an "undesignated remittance" as a payment. Second, the parties agree that the IRS used Code 670, rather than Code 640, to record the remittance as a "payment received" upon receiving the remittance, rather than a deposit. Third, the IRS credited the amount directly to the Estate's account, rather than put the remittance in a separate account for deposit. All of these actions strongly suggest that the IRS conformed to Rev. Proc. 2005-18 and treated the remittance as a tax payment.

Although the IRS used Code 670 to record the remittance as a payment, plaintiff contends that the IRS's failure to calculate interest accrued on the remittance contradicts the IRS's position that it treated the remittance as a tax payment. The court disagrees. According to IRS staff Jean Newkirk's testimony, the IRS's computer does not start calculating interest accrued on the taxpayer's tax payment before the return filed and tax liability is determined. (Dep. Tr. of Jean Newkirk (dkt. #27) 24:1-2.) Once the tax return is received, the IRS will calculate the interest back to the due date of the return. (*Id.* at 56:5.) If the tax return is filed when the three-year recovery period had expired, the IRS will not calculate the interest. (*Id.* at 57:1.)

The plaintiff does not dispute the above internal procedures adopted by the IRS, but treating them as true, argues the IRS's failure to calculate interest on the remittance

13

is still not evidence the IRS treated the remittance as a tax payment. By the time plaintiff filed the Estate tax return, however, it is also beyond dispute that the three-year recovery period had expired. The fact that the IRS followed its internal procedure, not calculating interest in this situation further demonstrates that it treated the remittance as a tax payment in the first place.

## CONCLUSION

Although the first factor articulated by the Seventh Circuit in *Moran* weighs in favor of the plaintiff's position, its intent to make a down payment on its tax liability and the fact that IRS treated the remittance as a tax payment tip the balance strongly to a finding of a tax payment. Based on this, the court finds that the Estate's remittance does not constitute a deposit. This result may seem unfair -- after all the government is allowed to keep a payment that it concedes was not due -- but tax laws are "not normally characterized by case-specific exceptions reflecting individualized equities." *United States v. Brockamp*, 519 U.S. 347, 352 (1997). Despite the equities, the court concludes that plaintiff is unable to meet its burden of demonstrating that the remittance was a deposit and, therefore, this court has no jurisdiction over its claim for refund. *Dalm*, 494 U.S. at 609.

## ORDER

IT IS ORDERED that

1) the plaintiff Leone Syring's motion for summary judgment (dkt. #16) is DENIED;

2) the defendant United States of America's motion for summary judgment (dkt. #22) is GRANTED; and

3) the clerk of court is ordered to dismiss this action for lack of jurisdiction.

Entered this 15th day of August, 2013.

                              BY THE COURT:

                              /s/

                              _____
                              WILLIAM M. CONLEY
                              District Judge